MESCH CLARK ROTHSCHILD
259 N. Meyer Ave.
Tucson, AZ 85701-1090
Phone: 520-624-8886
Fax:    520-798-1037
Nathan S. Rothschild, State Bar No. 029847
Katie Filous Malka, State Bar No. 034626
Frederick J. Petersen, State Bar No. 019944
Email: nrothschild@mcrazlaw.com
       kmalka@mcrazlaw.com
       fpetersen@mcrazlaw.com
       ecfdc@mcrazlaw.com

CRAWFORD LAW, PLLC
34 W. Franklin Street
Tucson, AZ 85701
Phone: 520-822-8644
Fax:    520-844-1187
Email: michael@crawfordazlaw.com
By:    Michael J. Crawford, State Bar No. 013802

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Antoinette Windhurst, a single/widowed woman on behalf of herself and as Personal Representative of the Estate of her deceased husband, David Windhurst,<br><br>Plaintiff,<br><br>-vs-<br><br>Arizona Department of Corrections, a governmental entity; Charles Ryan, in his individual capacity as the Director of Arizona Department of Corrections; State of Arizona, a governmental entity; Corizon Health, Inc., a business domiciled in Arizona,<br><br>Defendants. | No. 4:25-cv-00257-SHR-PSOT<br><br>**OBJECTION TO PUTATIVE DEFENDANTS' MOTION TO TRANSFER VENUE TO THE U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION PURSUANT TO 28 U.S.C. §1412** |

Plaintiff Antoinette Windhurst, both individually and as Personal Representative to the Estate of David Windhurst ("Windhurst") objects to putative defendants' CHS TX, Inc. ("CHS TX"), YesCare Corp. ("YesCare"), and Geneva Consulting, LLC ("Geneva", collectively the "Putative Defendants") Motion to Transfer Venue.[1]

On Christmas Day, 2016, David Windhurst died while he was incarcerated under the care of the Arizona Department of Corrections. On December 22, 2017, Windhurst filed suit in the Superior Court for the State of Arizona, Pima County, Case No. C20175978, for wrongful death, violations of the Adult Protective Services Act/A.R.S. §46-451 et seq. and punitive damages (the "Windhurst Suit").

When the Putative Defendants filed for Removal and their Motion to Transfer Venue (the "Venue Motion"), Windhurst had pending a motion to substitute CHS TX and YesCare for Corizon Health under the doctrine of successor liability. Windhurst's motion also sought to add Geneva as the alter ego of YesCare and CHS TX, and in the alternative, to add YesCare as the alter ego of CHS TX if not liable under the doctrine of successor liability. Contrary to the suggestions made by the Putative Defendants, Windhurst seeks **no new cause of action and is not going to seek a new cause of action**. Windhurst only seeks to utilize the equitable doctrines and legal remedies of successor liability and alter ego, which

---

[1] Nothing in this Motion constitutes Windhurst's consent to the Putative Defendants' removal of her state law cause of action nor may be construed as submitting to the jurisdiction of this Court to decide Windhurst's claims. Windhurst will be filing a separate Motion to Remand to address the improper removal effort of the Putative Defendants. See 28 U.S.C. §1447(c). Windhurst proposed aligning the briefing schedule for Remand with briefing for the Motion to Transfer Venue so the remand issue could be timely considered in conjunction with the Venue Motion. Putative Defendants would not agree to scheduling adjustments unless Windhurst stipulated to a change of venue to the Texas bankruptcy court. That requirement is not acceptable to Windhurst. In order to efficiently utilize Court resources, the to be filed Remand Motion should be considered along with the Venue Motion.

2

is her absolute right under Arizona law, as they relate to her underlying causes of action which arise from the wrongful death and abuse and neglect of David Windhurst.

The Putative Defendants improperly move to transfer venue of the pending Windhurst Suit in which discovery has been completed, dispositive motions adjudicated, an appeal to the Arizona Supreme Court decided, and a trial date set, to a Texas bankruptcy court that lacks jurisdiction to adjudicate the case on its merits. *See* 28 U.S.C. §157(b)(2)(B); 28 U.S.C. §157(b)(5). Sending the case from a court ready to proceed to trial, to a court in an unrelated state that lacks jurisdiction to decide the case merits is akin to procedural purgatory where Windhurst and the court would have no ability to adjudicate the matter to its conclusion. The Venue Motion must be denied.

## I.      THE COURT MAY NOT TRANSFER VENUE

Putative Defendants were parties to a global settlement in the Tehum Care Services, Inc.,[2] ("Tehum") bankruptcy proceeding, which was incorporated into and confirmed in Tehum's Plan of Reorganization. (Exhibit 1, Tehum Plan) The global settlement allowed personal injury and wrongful death creditors, like Windhurst, to elect to receive a pro rata portion of the settlement funds paid by the Putative Defendants in exchange for a full and complete release of all claims against such parties, or "Opt-Out" of receiving any payment from the Bankruptcy estate, in order to return to state court to pursue "the claims or theories of recovery or remedies based on the doctrine of successor liability." (Exhibit 1, Tehum Plan, Class 7 Treatment, page 29 of 65)

---

[2] Formerly Corizon Health, Inc. before completing a Texas divisional merger in May 2022. On or about May 5, 2022, Corizon split itself and formed CHS TX, Inc., to which all personal property assets, employees, and active contracts were transferred. Corizon was allocated $1 million in cash, the right to draw on a $15 million Funding Agreement, all cancelled contracts, and liability for approximately 500 pending claims or lawsuits. CHS TX was subsequently acquired by YesCare for $100. On June 1, 2022, Corizon changed its name from Corizon Health, Inc. to Tehum Care Services, Inc. (Exhibit 2, Tehum Disclosure Statement)

The Windhurst Suit asserts three state law causes of action based on Arizona state law for wrongful death, violations of the Adult Protective Services Act/A.R.S. §46-451 et seq., and punitive damages. There are no claims asserted that raise a federal question. There is not diversity among defendants. And because of her election to "opt-out", Windhurst "shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust." (Exhibit 1, page 29 of 65). Her pending lawsuit, therefore, will have no impact on the post-confirmation bankruptcy estate.

In general, the district courts have original, but not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). Under 28 U.S.C. §157(a), district courts may refer bankruptcy proceedings to the bankruptcy courts. But the District Court may not refer personal injury or wrongful death matters to the bankruptcy court. Instead, "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. §157(b)(5). The bankruptcy jurisdiction statute itself prevents the relief requested by the Putative Defendants.

Bankruptcy judges are authorized to hear and determine core proceedings arising under Title 11 or arising in a case under Title 11. 28 U.S.C. §157(b)(1). The definition of core proceedings specifically provides that a bankruptcy court may not engage in the estimation or liquidation of unliquidated personal injury tort or wrongful death claims. 28 U.S.C. §157(b)(2)(B). Further, this Court may only transfer venue to a court where the action could have been brought or where all parties consent. 28 U.S.C. §1404(a). "Section 1404(a) permits a court to transfer an action '[f]or the convenience of parties and witnesses' and 'in the interest of justice,' so long as the action could have been filed in the transferee district in the first instance." *Rubio v. Monsanto* 181 F.Supp.3d 746, 760. This claim could

not have been filed in a Texas federal court, or in a Texas bankruptcy court. There is no federal question or cause of action nor diversity which gives rise to federal jurisdiction. Further, and very specifically, the Texas bankruptcy court lacks jurisdiction to adjudicate Windhurst's claims. Windhurst does not consent to the transfer of her claim to a court and district that is not convenient, does not serve justice, and lacks jurisdiction to adjudicate her claims based entirely on Arizona state law. Because the Texas bankruptcy court lacks jurisdiction to liquidate Windhurst's claims, this Court may not transfer venue to the Texas bankruptcy court.

Even if transfer of venue was an available procedural remedy, which it is not, this Court would need to individually weigh the following factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum,[3] (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

None of the above factors favor transferring venue. The location where the conduct leading to the cause of action all occurred in Arizona. The law in question is State of Arizona exclusively. In particular, the law underlying two of the threes causes of action are detailed in Arizona state statute--wrongful death and Arizona's Adult Protective Services Act. The Plaintiff has chosen Arizona State Court as the most convenient, appropriate, and efficient venue. And this case has remained pending for more than 8 years where discovery has been completed, dispositive motions decided, an appeal to the Arizona Supreme Court

---

[3] As it relates to this factor "the Defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

decided, and a trial date set. The State of Arizona (also a defendant) and Windhurst have no relation with Texas. At the time of filing, it is believed Corizon had no relation with the State of Texas. Removing the matter to Texas will significantly raise the cost of the litigation and will likely limit the ability to compel witnesses to appear for trial, at great prejudice to Windhurst. In short, all the factors weigh against a transfer of venue.

## II.   WINDHURST MAY PURSUE STATE LAW REMEDIES BASED ON SUCCESSOR LIABILITY AND ALTER EGO

Windhurst elected to Opt-Out in conjunction with the Tehum Plan in order to pursue remedies against the Putative Defendants. As an Opt-Out creditor, Windhurst received the following treatment:

> **7. Class 7 — Opt-Out PI/WD Claims**
>
> (a) Treatment: On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out PI/WD Claim shall **retain or receive**, in full and final satisfaction of such Claim, **the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity** immediately prior to the Petition Date as part of or in connection with its PI/WD Claim and **that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action.** Except for the foregoing, Holders of an Opt-Out PI/WD Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Plan pursuant to the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan. **Consistent with the foregoing, each Holder of an Opt-Out PI/WD Claim may elect to pursue recovery on account of its PI/WD Claim from any of the Released Parties.** Holders of Opt-Out PI/WD Claims shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust.

(Exhibit 1, Tehum Plan, page 29 of 65)

The Plan treatment Windhurst received makes the following clear:

1. Windhurst retained all her right to assert "claims or theories of recovery or remedies" that she held on the Petition date, including specifically those based on the doctrine of successor liability. (Exhibit 1, Tehum Plan, page 29 of 65). As discussed in detail below, the state law remedies of successor liability and alter ego could only be brought by Windhurst, and after confirmation of the Plan, still can only be brought by Windhurst. Windhurst retained those claims and has an absolute right to now pursue those theories of recovery and remedies.

2. In addition, Windhurst also "receive[d]" from the Debtor those claims or theories of recovery or remedies "in connection with its PI/WD Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action." (Exhibit 1, Tehum Plan, page 29 of 65). Even though Windhurst does not believe she is asserting any Estate Cause of Action, to the extent related to her PI/WD claim, she "received" such actions from the Estate by terms of the Plan. Even if the Putative Defendants are correct that any part of Windhurst's remedy became an Estate Causes of Action (which explicitly include remedies of successor liability and alter ego), because related to Windhurst's PI/WD Claim they were transferred in exchange for her "Opt-Out" and may only be asserted by her.

3. The Plan makes absolutely clear that Windhurst may "elect to pursue recovery on account of its PI/WD Claim from **any** of the Released Parties." (Exhibit 1, Tehum Plan, page 29 of 65). The remedies Windhurst seeks to pursue were absolutely preserved by the Plan.

7

1    Instead of honoring the clear terms of their settlement, Putative Defendants attempt
2    to confuse Plan terms in a suggestion that the Plan involuntarily limits or hinders Windhurst
3    from pursuing her claims as entitled under the Plan. Putative Defendants somehow interpret
4    the Plan as granting them non-consensual releases (either full or partial) shielding them
5    from certain Windhurst remedies, even though Windhurst specifically opted out and refused
6    to release any claims against the Putative Defendants. Of course, the Supreme Court has
7    made clear that a Plan cannot grant such third-party releases as a matter of law. Any such
8    release would be an extra-jurisdictional exercise of the bankruptcy court's powers.
9    *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227 (2024).

10    Putative Defendants know that the Plan does not act to limit or impair Windhurst's
11    claims or remedies. As part of the confirmation process, the Tort Committee who was also a
12    party to the global settlement explained: "[o]ur plan unequivocally rejects *Purdue* releases,
13    it rejects non-consensual third party releases, and it releases [sic], and it rejects anything that
14    would be considered even remotely equivalent to a *Purdue* release." (Exhibit 3, March 3,
15    2025 Confirmation hearing transcript, page 20). Parties electing to opt-out pursuant to the
16    Plan were to be given a pass-through to bring their causes of action and all related remedies
17    to trial in front of a jury with the proper parties. *Id.*

18    Windhurst retained all of her remedies including successor liability and alter ego
19    associated with her long pending wrongful death claim and personal injury claim. Although
20    not necessary, for the avoidance of any doubt, if the Court believes Windhurst's motion
21    causes any confusion, she will voluntarily amend her Motion to Substitute to make clear that
22    Windhurst does not seek to pursue a fraudulent transfer cause of action or related remedies.
23    Windhurst's Motion to Substitute only seeks to substitute the proper parties for the pending
24    causes of action, so a clarification changes nothing in the relief actually requested.

25    Under Arizona Law, successor liability and alter ego are not causes of action but are
26    remedies possessed by the claimant. *A.R. Teeters & Associates, Inc. v. Eastman Kodak Co.*,

8

172 Ariz. 324, 836 P.2d 1034 (App. 1992); *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37, 821 P.2d 725, 728 (1991).

Alter ego under Arizona law is not a standalone cause of action but is **derivative of the Plaintiff's cause of action**. *Specialty Cos. Grp., LLC v. Meritage Homes of Ariz., Inc.*, 251 Ariz. 365, 369 ¶9-11, 492 P.3d 308, 312 (2021).

Similarly, successor liability under *Teeters* is not a distinct cause of action, but is remedial to an existing cause of action. *Winsor v. Glasswerks PHX, L.L.C.*, 204 Ariz. 303 (App. 2003) (successor liability derivative as a means to prevent corporate form abuse in a products liability cause of action), and *Warne Investments, Ltd. v. Higgins*, 219 Ariz. 186, ¶¶16-18 (App. 2008) (discussing that successor liability is simply a tool to allow existing creditor recovery in limited factual situations).

The distinction between causes of action and remedies is specifically supported by the Plan documents which acknowledge that alter ego and successor liability are remedies and not causes of action included within the Estate Causes of Action definition.

- "Under State law successor liability is not a cause of action. Rather, successor liability is an equitable doctrine or a theory of liability that transfers liability for a claim from a predecessor to a successor when certain factors are present. A successor may become liable for the debts of the predecessor when the transaction amounts to a consolidation or de facto merger, the transaction is fraudulent or done with the intent to escape liability, or the purchaser is a mere continuation of the seller." (Exhibit 2, Tehum Disclosure Statement, page 27 of 58)

- "Alter Ego and veil piercing are also not causes of action. They are also equitable doctrines or legal remedies. Alter ego and veil piercing theories do not create new causes of action." (Exhibit 2, Tehum Disclosure Statement, page 27 of 58).

9

Windhurst does not seek and does not intend to pursue any new cause of action. Rather, Windhurst seeks to substitute the proper parties for remedial relief under the existing causes of action. Windhurst's three causes of action remain absolutely the same. But simply, the remedies of successor liability and alter ego will be utilized to determine the parties responsible to pay damages related to such claims. And because Windhurst did not consensually release any party, she is free to pursue all of her remedies.

### III. WRONGFUL DEATH, APSA AND PUNITIVE DAMAGES ARE NOT ESTATE CAUSES OF ACTION:

The releases granted by the Plan (to which Windhurst opted out) are limited to those Estate Causes of Action not otherwise "distributed" to the Opt-Out PI/WD Claimants. ("except for the claims or theories of recover or remedies distributed to or retained by . . . Holders of Opt-Out PI/WD Claims . . . each Released Party shall be. . . forever released and discharged by the Debtor, its Estate, and each of their respective successors or assigns. . . from any and all Estate Causes of Action." (Exhibit 1, Tehum Plan, page 52 of 65)). Further, the releases specifically except the claims, theories of recovery, and remedies of Opt-Out Claimants.

Notwithstanding the carve-out and clear limitation in the scope of the Release, as well as the explicit distribution of rights to Windhurst pursuant to the Plan, the claims asserted by Windhurst, and their related remedies, were never Estate Causes of Action.

> 77. "*Estate Causes of Action*" means **Causes of Action owned, held, or capable of being asserted by, under, <u>through or on behalf of the Debtor</u> or its Estate**, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate ... Without limiting the foregoing, Estate Causes of Action shall include: (a) **Causes of Action that**

10

**prior to the Petition Date could have been asserted by the Debtor on its own behalf <u>under applicable state law</u>**, including Causes of Action seeking to impose liability based on (i) the doctrine of successor liability, or (ii) the doctrines of alter ego or veil piercing; (b) Causes of Action that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is common to all creditors of the Debtor and can be asserted by the Debtor under applicable state law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor. (Exhibit 1, page 11 of 65)

Only causes of action possessed by or that could be brought by Tehum under applicable state law can be included within the definition provided under the Plan.

Arizona broadly defines a cause of action as, "a concise statement of the facts constituting the plaintiff's cause of action," which must be alleged with sufficient clarity and relevance to entitle the plaintiff to relief under the law. *Ackerman v. S. Ariz. Bank & Tr. Co.*, 39 Ariz. 484, 487, 7 P.2d 944, 945 (1932). The Windhurst Suit includes only three causes of action: 1) Wrongful Death/Medical Malpractice; 2) Adult Protective Services Act and 3) Punitive Damage. (See Exhibit 4, Complaint filed on 12/22/2017 ¶¶66-99.)

As discussed above, under Arizona law, both successor liability and alter ego are remedies, derivative to these three underlying claims. Putative Defendants' purported basis for transfer of venue is nonsensical. Arizona law provides clear limits as to who may bring a wrongful death or vulnerable adult action. *See* A.R.S. §12-612(A) (limiting who may bring a wrongful death action); A.R.S. §46-455; *Wilmot v. Wilmot,* 203 Ariz 565, 569 ¶11 (2002)(Wrongful death claim is one cause of action brought for and on behalf of the surviving wrongful death beneficiaries). Certainly, Tehum cannot bring a wrongful death or a vulnerable adult cause of action seeking punitive damages as a matter of Arizona law, and certainly not against itself. The remedies of successor liability and alter ego are derivative of the state law claims, so could not be included as Estate Causes of Action, because as a matter of law, they belong solely to Windhurst, and could not be brought through or on

behalf of the Debtor. Even more certain, the Texas bankruptcy court lacked jurisdiction to adjudicate or liquidate such claims, and could not force Windhurst into a full or partial release of such claims, without her consent. See 28 U.S.C. §157(b)(2)(B); *Harrington v. Purdue Pharma L.P.,* 603 U.S. 204, 227 (2024).

## IV.  PLAINTIFF'S ALTER EGO REMEDY RELATES TO A THIRD PARTY, NOT FROM TEHUM

The Putative Defendants seemingly acknowledge that Windhurst may pursue remedies for successor liability. But they suggest that all "claims" for alter ego were released. In so arguing, the Putative Defendants confuse party identity in making such an argument.

Windhurst is not asserting any claims or remedies for a party being an alter ego of the Debtor, Tehum.

Windhust does assert that CHS TX and YesCare (both non-debtor parties) are responsible based on the doctrine of successor liability. And Windhurst also asserts that, to the extent YesCare is not a successor, it is liable for her damages as an alter ego of CHS TX. Finally, Windhust asserts that Geneva is liable as an alter ego of YesCare and CHS TX. Again, none of CHS TX, YesCare, or Geneva are Debtors, and Windhurst is not alleging any is liable as the alter ego of the Debtor.

As discussed above, the Texas bankruptcy court is limited in its ability to grant a third-party release without the consent of Windhurst to any portion of Windhurst's claim or remedies against non-debtor third parties. *Purdue Pharma,* at 227. There is no indication, discussion, nor legal ability for the Texas bankruptcy court to have granted a non-consensual release to Geneva or YesCare to the extent they are alter egos of a non-debtor party. Such a suggestion is completely without merit.

V. **PUTATIVE DEFENDANTS ARGUE FOR A RESULT WHICH IS INCOMPATIBLE WITH THE PLAN AND LIKELY A VIOLATION OF THE PLAN'S INJUNCTION AGAINST INTERFERENCE**

The Plan provides:

> As of the Effective Date, neither YesCare Corp., CHS TX, Inc. nor any other alleged successor entity **may assert in any litigation** involving an Opt-Out GUC Claim, an Opt-Out PI/WD Claim, or an Opt-Out Indirect Claim in the Civil Justice System **that such Claims, to the extent asserted against YesCare Corp., CHS TX, Inc., or any other successor based on the doctrine of successor liability are barred, released, discharged, or impaired by the Confirmation Order, the Plan, or the Estate Release**. The right to assert such Claims based on the doctrine of successor liability has been received or retained by the Holders of such Claims under Article III.D, and the Holders of such Claims shall have a Claim against Debtor solely to the extent necessary to preserve and enforce such right. Subject to the foregoing, YesCare Corp.'s, CHS TX, Inc.'s, or any other alleged successor entity's claims, rights, and defenses to any action brought by the Holder of an Opt-Out GUC Claim, an Opt-Out PI/WD Claim, or an Opt-Out Indirect Claim in the Civil Justice System are expressly preserved under the Plan, including the rights of YesCare Corp., CHS TX, Inc., or any other alleged successor entity to contest liability for Opt-Out GUC Claims, Opt-Out PI/WD Claims, or Opt-Out Indirect Claims and to argue that they are not liable as successors to the Debtor based on the facts of the underlying action and/or the requirements for imposing successor liability under applicable law. (Exhibit 1, Tehum Plan, page 56 of 65)

Putative Defendants, who submitted to the jurisdiction of the Texas bankruptcy court and the Plan, are in violation of the injunction against interference by filing both the Notice of Removal and the Motion to Transfer Venue. The suggestion that the Confirmed Plan somehow limits or impairs Windhurst's claims, or related remedies against CHS TX, YesCare, "or any other alleged successor entity" are explicitly precluded. Based on their settlement, and the confirmed Plan, such parties retain the right to "contest liability" and to argue "they are not liable as successors to the Debtor," but cannot attempt to use the Plan as a sword to suggest any Windhurst claims or remedies are limited, impaired, or released.  But even Windhurst understands that the proper way to enforce her rights is not to move the entire case to the Texas bankruptcy court. In so much as Windhurst should wish to pursue

13

sanctions or recover damages against Putative Defendants, removal and change of venue is not the correct procedural motion. The correct motion would be a motion in the Texas bankruptcy court.

## VI. CONCLUSION

For the foregoing reasons the change of venue must be denied.

Dated: June 13, 2025

                                MESCH CLARK ROTHSCHILD

By: */s/Nathan S. Rothschild*
      Nathan S. Rothschild
      Katie Filous Malka
      Frederick J. Petersen
      Attorneys for Plaintiff

CRAWFORD LAW, PLLC

By: *s/Michael J. Crawford*
      Michael J. Crawford
      Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 13, 2025, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court through the U.S. District Court Electronic Court Filing System, which caused notice of such filing to be sent electronically to the registered attorneys of record. Copies of the foregoing document were emailed to:

Anthony J. Fernandez
Alyssa R. Illsley
Dustin A. Christner
Quintairos, Prieto, Wood & Boyer, P.A.
8800 E. Raintree Drive, Ste. 100
Scottsdale, AZ 85260
Email: afernandez@qpwblaw.com
Email: alyssa.illsley@qpwblaw.com
Email: dustin.christner@qpwblaw.com
Attorneys for Defendants

Amanda E. Heitz
Bowman and Brooke, LLP
Phoenix Plaza – Suite 1900
2929 N. Central Avenue
Phoenix, AZ 85012-2721
Email:  Amanda.heitz@bowmanandbrooke.com
Attorneys for CHS TX, Inc., YesCare Corp, and Geneva Consulting, LLC


/s/Grelda Castro

4910-4510-1901, v. 1

15