Amanda E. Heitz (SBN 026519)
**BOWMAN AND BROOKE LLP**
Phoenix Plaza – Suite 1900
2929 North Central Avenue
Phoenix, Arizona 85012-2721
Telephone: (602) 643-2300
Fax: (602) 248-0947
Amanda.Heitz@bowmanandbrooke.com
*Attorneys for CHS TX Inc. and YesCare Corp., and Geneva Consulting LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| ANTOINETTE WINDHURST, a single/widowed woman on behalf of herself and as Personal Representative of the Estate of her deceased husband, David Windhurst,<br><br>Plaintiff,<br><br>vs.<br><br>ARIZONA DEPARTMENT OF CORRECTIONS, a governmental entity; CHARLES RYAN, in his individual capacity as the Director of Arizona Department of Corrections; STATE OF ARIZONA, a governmental entity; CORIZON HEALTH, INC., a business domiciled in Arizona,<br><br>Defendants. | Civil No.: 4:25-cv-00257-SHR-PSOT<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**PUTATIVE DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO TRANSFER VENUE TO THE U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION PURSUANT TO 28 U.S.C. § 1412** |

Putative Defendants CHS TX Inc., YesCare Corp., and Geneva Consulting LLC (the "Putative Defendants") respectfully file this Reply in further support of their Motion to Transfer this action to the U.S. Bankruptcy Court for the Southern District of Texas (Houston Division) that has exclusive jurisdiction over the bankruptcy case captioned *In re Tehum Care Services, Inc.*, Case No. 23-90086 (CML) (the "Bankruptcy Court").

Plaintiff's Objection to the Motion to Transfer squarely invokes the Bankruptcy Court's jurisdiction and supports transfer to that Court. The Bankruptcy Court retained exclusive jurisdiction "over all matters arising out of, or related to, the Chapter 11 Case and the Plan," including exclusive jurisdiction to "resolve any cases, controversies, suits,

disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, implementation, interpretation, or enforcement of the Plan." *See* ECF No. 7-1 at 120 (Plan, Art. XII.A10).  The Objection invokes this exclusive jurisdiction by opposing Putative Defendants' effort to enforce the Plan, disputing the interpretation and implementation of the Plan, attempting to justify asserting Estate Causes of Action that it lacks standing to pursue under the Plan, and admitting in its last sentence that the Bankruptcy Court is the right venue to decide these issues.  Plaintiff cannot complain about litigating these issues in the Bankruptcy Court—she voted for the Plan.  For all of the reasons herein and in Putative Defendants' Motion to Transfer, the Court should transfer this case to the Bankruptcy Court.

**I.**     **This Court Has Authority to Transfer This Case to the Bankruptcy Court**

      **A.**     **The Bankruptcy Court is the Proper Court to Determine a Core Proceeding**

Plaintiff concedes that "Bankruptcy judges are authorized to hear and determine core proceedings arising under Title 11 or arising in a case under Title 11." *See* 28 U.S.C. § 157(b)(2).  A dispute arising from or relating to a confirmed Bankruptcy Plan is a core proceeding under 28 U.S.C. § 1334(b) and under 11 U.S.C. § 1142(b) (authorizing post confirmation orders "necessary for the consummation of the Plan") because it "arises in" a case under Title 11.  *See In re U.S. Brass Corp.*, 301 F.3d 296 (5th Cir. 2002) (dispute over impact of Plan "qualifies as a core proceeding over which the bankruptcy court had full judicial power."); *In re MMP 10180, LLC*, No. 4:10-BK-38675-JMM, 2012 WL 426708, at *3 (Bankr. D. Ariz. Feb. 9, 2012) ("This is a core proceeding, as it involves an issue over the interpretation of a confirmed plan's provisions, a plan which arose solely because it is a Title 11 remedy.").  The Bankruptcy Court expressly retained its exclusive jurisdiction over disputes arising out of or related to the Plan.  *See* ECF No. 7-1 at 119 (Plan, Art. XII.A).  Accordingly, this Court should transfer this case to the Bankruptcy Court.

B.      **The Objection Ignores that Transfer is Proper Under 28 U.S.C. § 1412**

Plaintiff argues that transfer is inappropriate based on 28 U.S.C. § 1404(a) because her original wrongful death claims "could not have been filed in a Texas federal court, or in a Texas bankruptcy court." Transfer law is not so limiting. The first step of this transfer is to this Court pursuant to 28 U.S.C. §1452(a) ("Removal of claims related to bankruptcy cases"), which permits removal when the "district court has jurisdiction of such claim or cause of action under section 1334 of this title." This case was properly removed to this Court because the interpretation of the Plan is both a core proceeding and "related to" the bankruptcy case within the meaning of 28 U.S.C. § 1334(b).

The second step of this transfer is pursuant to 28 U.S.C. § 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Unlike § 1404(a) grounds, § 1412 does not limit transfer to a district where a case might have been brought. Further, Bankruptcy Rule 7087 provides: "On motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2)."

A District Court's ability to transfer a dispute over the impact of a Plan to the Bankruptcy Court that retained exclusive jurisdiction over that Plan has the merit of allowing the Bankruptcy Court with direct responsibility and familiarity with the Plan to hear and decide the dispute. Further, Plaintiff subjected herself to the Bankruptcy Court's exclusive jurisdiction because she participated in the Bankruptcy, voted for the Plan, and then tried to pursue barred Causes of Action in violation of the Plan.

C.      **The Eventual Proper Venue for a Trial is Not the Present Issue**

Plaintiff argues that transferring the case to the Bankruptcy Court would leave her in a "procedural purgatory" regarding an eventual trial. This argument has no merit. First, it puts the cart before the horse. Plaintiff's recent effort to add new defendants means this

1  case is no longer close to trial ready. Plaintiff has not even reached the first step of
2  establishing that Putative Defendants should be new defendants (they should not be).
3  　　　Second, Plainitff will have several procedural avenues available to her when it
4  comes time to determine a trial venue. As Plaintiff notes, 28 U.S.C. § 157(b)(5) provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*.

8  　　　But as the highlighted language indicates, Plaintiff's reliance on Section 157(b)(5)
9  to oppose transfer is misplaced because: (1) The question before this Court is not the
10 eventual appropriate venue for a trial, and (2) Section 157(b)(5) requires an eventual
11 decision not by this Court, but by "the district court in which the bankruptcy case is
12 pending." The reference to the district court where the bankruptcy case is pending
13 *supports* transfer.
14 　　　Plaintiff also opposes transfer by arguing that under 28 U.S.C. § 157(b)(2)(B), a
15 bankruptcy court "may not engage in the estimation or liquidation of liquidated personal
16 injury tort or wrongful death claims." That section is also inapposite to the present transfer
17 or jurisdiction issues, and because Plaintiff leaves out the rest of that section's language:
18 "against the estate for purposes of distribution in a case under title 11." Plaintiff's
19 improper attempt to assert Estate Causes of Action does not involve a claim "against the
20 estate" or litigation of a claim "for purposes of distribution in a case under title 11."
21 Rather, it is an improper attempt to assert Estate Causes of Action against "Released
22 Parties" for purposes of a recovery to Plaintiff. Accordingly, Section 157(b)(2)(B) fails
23 to address the jurisdiction or transfer questions at issue here.
24 ///
25 ///
26 ///
27 ///
28 ///

II. **Plaintiff's Incorrect Arguments About the Plan are Not Relevant to the Motion to Transfer Except to Highlight Why the Bankruptcy Court Should Hear and Decide These Disputes**

    A. **Alter Ego, Veil Piercing, and Fraudulent Transfer are "Causes of Action" as Defined in the Plan**

Plaintiff argues that she is not seeking to add a "cause of action" in violation of the Plan's bar against her asserting "Estate Causes of Action" because Arizona law treats alter ego and veil piercing claims as equitable "remedies" and not standalone causes of action. As an initial matter, this is an argument about the meaning of the Plan for the Bankruptcy Court to decide, which makes this an argument *supporting* transfer.

Plaintiff is also wrong. The distinction Plaintiff identifies under Arizona law is irrelevant under the Plan. The Plan defines "Causes of Action" to include:

> "*Causes of Action*" means ***any*** claims, causes of action, interests, damages, ***remedies***, demands, ***rights***, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, ***liabilities***, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, ***equity***, or otherwise.

ECF No. 7-1 at 66 (Plan, Art. I, ¶ 18) (emphasis added). Thus, any equitable remedies, rights or liabilities are expressly within the definition of Causes of Action.

    B. **Causes of Action Based On Alter Ego, Veil Piercing, and Fraudulent Transfer Belong to the Estate, Not Individual Plaintiffs**

The Plan defines "Estate Causes of Action" to mean (in sum) "Causes of Action owned, held, or capable of being asserted by, under, through or on behalf of the Debtor or its Estate…[including] Causes of Action that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is common to all creditors of the Debtor and can be asserted by the Debtor under applicable state law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative

or vicarious liability for liabilities of the Debtor." ECF No. 7-1 at 71. Plaintiff's argument that she is not asserting Estate Causes of Action under this definition is wrong.

It is beyond cavil that claims for piercing the corporate veil/alter ego and fraudulent conveyance are claims that belong to the estate and therefore, are Estate Causes of Action as defined in the Plan. *See, e.g., Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 258–59 (5th Cir. 2010) (holding that alter ego claims and reverse veil-piercing actions belong to the bankruptcy estate); *id.* 608 F.3d at 259–60 (citing *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983) (holding that because an action under the Texas Fraudulent Transfers Act is essentially one for property that belongs to the debtor, the cause of action belongs to the debtor)). Similarly, claims that allege injury to the creditor body as a whole, as compared to those that allege a direct harm to an individualized creditor, constitute derivative claims which are property of the estate and, therefore, are also Estate Causes of Action. *See, e.g., Matter of Buccaneer Resources, L.L.C.*, 912 F.3d 291, 293 (5th Cir. 2019) (holding that "if the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate … to pursue a claim on its own behalf, a creditor must show that this direct injury is not dependent on injury to the estate.").

Any argument that Putative Defendants are liable to Plaintiff for Corizon's conduct under a fraudulent transfer, alter ego, or veil piercing theory is an Estate Cause of Action that alleges injury to the creditor body as a whole and not an injury merely to Plaintiff. Plaintiff's Rule 25(c) motion says as much. Plaintiff argues that the Putative Defendants are liable for Corizon's conduct because "the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts," YesCare's acquisition of CHS was a "sham," and that Arizona law should apply because of a purported need "to circumvent the corporate from [sic] when that form has been abused or used to perpetrate a fraud." Motion, Exhibit C. Plaintiff does not have standing to make these arguments. As the TCC's counsel explained at the Confirmation Hearing, "Obviously, if someone were to assert a fraudulent transfer claim in that litigation, I think that some would come

6

back and see you, Your Honor, because it is part of what is being settled here." *See* Bankr. Doc. 2021, p. 27.

For the same reason, Plaintiff cannot dodge her lack of standing by arguing that she "is not asserting any claims for remedies for a party being an alter ego of the Debtor, Tehum." That is exactly what she is doing.[1] Plaintiff's Rule 25(c) Motion argues that any corporate or contractual relationships between and among Corizon, CHS TX, YesCare, and Geneva was a part of a fraud intended to deprive all claimants of a remedy ***against Corizon*** outside of the bankruptcy court. Plaintiff is not arguing that CHS TX, YesCare, or Geneva have liability to her that is independent of Corizon's liability to her.

In any event, whatever needle that Plaintiff is trying to thread is foreclosed by the Plan. The Release of Estate Causes of Action Against the Released Parties expressly releases "any and all Estate Causes of Action":

> based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, … the Plan of Divisional Merger, … the business or contractual arrangements between one or both of the Debtor and any Released Party … or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Plaintiff's alter ego, veil piercing, and fraudulent transfer allegations plainly arise from the "Plan of Divisional Merger," "the business or contractual arrangement between one or both of the Debtor and any Released Party," and pre-Effective Date transactions and agreements relating to them, including YesCare's acquisition of CHS and Corizon,

---

[1] In her Rule 25(c) motion, Plaintiff wrongly argues "Plaintiff Windhurst kept alive her claims to legally pursue CHS TX, YesCare, and Geneva for their liability under theories of fraudulent transfer, *successor liability*, alter ego, and veil piecing." The only one of these claim that the Plan allows Plainitff to assert is a "mere continuation" claim—a claim that CHS and/or YesCare are *successors* to Corizon for reasons unrelated to an improper or fraudulent act or motive. CHS and YesCare will contest this claim on the merits at an appropriate time.

YesCare, and CHS's entry into the MSA with Geneva. Again, the Rule 25(c) Motion at p. 6-9 says so, describing these events as "Corizon's full restructuring transaction."

Again, however, any dispute about the meaning or impact of the Plan is for the Bankruptcy Court to decide and supports transfer of this case to that Court.

## CONCLUSION

For the reasons herein and in the Motion to Transfer, Putative Defendants respectfully request that the Court grant the Motion to Transfer and transfer the case to the United States Bankruptcy Court for the Southern District of Texas (Houston Division) presiding over the bankruptcy proceeding styled *In re Tehum Care Services, Inc.*, Case No. 23-90086 (CML).

Respectfully submitted this 20th day of June, 2025.

By: */s/ Amanda E. Heitz*
Amanda E. Heitz
**BOWMAN AND BROOKE LLP**
2929 N. Central Avenue, Suite 1900
Phoenix, AZ 85012
602-643-2300
amanda.heitz@bowmanandbrooke.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Nathan S. Rothschild
Katie Filous Malka
MESCH CLARK ROTHSCHILD
259 N. Meyer Ave.
Tucson, AZ 85701
Phone: 520-624-8886
nrothschild@mcrazlaw.com
kmalka@mcrzlaw.com
ecfpima@mcrazlaw.com
Michael J. Crawford
CRAWFORD LAW, PLLC
34 W. Franklin St.
Tucson, AZ 85701
Phone: 520-822-8644
michael@crawfordazlaw.com

*Attorneys for Plaintiff*

Anthony J. Fernandez
Alyssa R. Illsley
Dustin A. Christner
Quintairos, Prieto, Wood & Boyer, P.A.
8800 E. Raintree Drive, Ste. 100
Scottsdale, AZ 85260
afernandez@qpwblaw.com
alyssa.illsley@qpwblaw.com
dustin.christner@qpwblaw.com

*Attorneys for Defendants*

                          By: */s/ Marcie Buchanan*
                               An Employee of Bowman and Brooke LLP