Exhibit 4

RECEIVED
MAY 16 2025
GARY L. HARRISON
CLERK, SUPERIOR COURT

MESCH CLARK ROTHSCHILD
259 N. Meyer Ave.
Tucson, AZ 85701-1090
Phone: 520-624-8886
Nathan S. Rothschild, State Bar No. 29847
Katie Filous Malka, State Bar No. 034626
Email: nrothschild@mcrazlaw.com
kmalka@mcrazlaw.com
ecfpima@mcrazlaw.com

CRAWFORD LAW, PLLC
34 W. Franklin Street
Tucson, AZ 85701
Phone: 520-822-8644
Michael J. Crawford, State Bar No.13802
Email: michael@crawfordazlaw.com

Attorneys for Plaintiff

ARIZONA SUPERIOR COURT

PIMA COUNTY

| | |
|---|---|
| ANTOINETTE WINDHURST, a single/widowed woman on behalf of herself and as Personal Representative of the Estate of her deceased husband, David Windhurst,<br><br>Plaintiff,<br><br>-vs-<br><br>ARIZONA DEPARTMENT OF CORRECTIONS, a governmental entity; CHARLES RYAN, in his individual capacity as the Director of Arizona Department of Corrections; STATE OF ARIZONA, a governmental entity; CORIZON HEALTH, INC., a business domiciled in Arizona,<br><br>Defendants. | No. C20175978<br><br>**MOTION TO SUBSTITUTE AND/OR ADD CHS TX, INC., YESCARE CORP, AND GENEVA CONSULTING LLC AS DEFENDANTS IN PLACE OF CORIZON HEALTH, INC.,**<br><br>(Honorable Kyle Bryson) |

Plaintiff, pursuant to Rule 25(c), *Ariz.R.Civ.P.*, seeks an order substituting CHS TX Inc., YesCare Corp., and Geneva Consulting LLC, for Defendant Corizon Health, Inc. (nka Tehum Care Services, Inc.) or, in the alternative, an order to add CHS TX, Inc., YesCare Corp. and Geneva Consulting LLC as party defendants. This Motion is supported by the following Memorandum of Points of Authority.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. SUMMARY OF ARGUMENT**

Almost 5 years after Plaintiff Antoinette Windhurst ("Windhurst") initiated this suit, Defendant Corizon Health Inc. ("Corizon") split into two corporations via a scheme nicknamed the "Texas Two-Step." The first corporation, CHS TX Inc. ("CHS TX"), obtained all Corizon's assets, employees, facilities, equipment, secured creditors, and active contracts. The second corporation kept Corizon's name, but inherited only a minimal supply of cash, access to a conditional funding agreement, and the right to collect on certain Corizon's insurance policies – that, and liability for more than 460 of Corizon's pending, prisoner lawsuits.

Pursuant to Rule 25(c), *Ariz.R.Civ.P.*, "[i]f a party's interest is transferred" to another party (transferee), that transferee, upon motion, can be ordered by the court to be "substituted in the action" for the original party or "joined with the original party." Under Arizona law, CHS TX is a successor-in-interest to Corizon's obligations in this case, because it is a "mere continuation" of Corizon. As such, this Court must substitute CHS TX in this case for Corizon, or order CHS TX joined to this case as a defendant.

Shortly after CHS TX was created, it was acquired by YesCare Corp. ("YesCare"), a corporation formed by Corizon's then CEO, Sara Tirschwell. CHS TX immediately began doing business as YesCare. As discussed below, YesCare is also a successor to Corizon and/or the alter ego of CHS TX and should therefore also be substituted for Corizon or added as a party to this case.

Finally, YesCare is operated as a shell company that is controlled pursuant to a Management Services Agreement with Geneva Consulting LLC ("Geneva") that also encompasses CHS TX. The Management Services Agreement gives Geneva control over **all** aspects of YesCare and CHS TX, and mandates that Geneva receives all of their revenue. YesCare and CHS TX **cannot** make any corporate decisions without Geneva's consent.

Geneva is using YesCare and CHS TX as a mere instrumentality to evade liability. Geneva is the alter ego of both YesCare and CHS TX. Based on this, Geneva must also be added as a party to this case.

## II. FACTS

This case was filed on December 22, 2017, against Corizon, Arizona Department of Corrections, its Director and the State of Arizona. (See Complaint.) The claims arise from David Windhurst's ("David") wrongful death on December 25, 2016, at the hands of his medical providers, while he was incarcerated in the Arizona Department of Corrections. (Id.) In 2016, the State of Arizona, in fulfillment of their non-delegable duty to provide incarcerated people with healthcare, contracted with Corizon to provide this care. (**Ex. 1** - Contract between Corizon and DOC.)

At the time of his incarceration, David was an Arizona resident, had been prosecuted by an Arizona prosecutorial agency and was incarcerated by the order of an Arizona judge. (**Ex. 2** - Presentence Report.) While incarcerated in Arizona, David was provided care by Arizona licensed healthcare providers employed by Corizon. (**Ex. 1**; Complaint.) Those Corizon healthcare providers ignored or otherwise disregarded David's needs causing him to go septic and die in Arizona on Christmas day, mere weeks before he was to be released. (See Complaint.)

The only reason why those healthcare providers were providing care to David was because Arizona contracted with Corizon to fulfill their non-delegable duty for the care of Arizona inmates. (**Ex. 1.**) A few key provisions of the contract mandated the following:

1. Corizon was required by the contract to maintain an Arizona corporate presence.
2. Corizon agreed to indemnify the State of Arizona.
3. The Contract between Corizon and the State of Arizona required it to be interpreted under Arizona law.

4. The Contract required all healthcare providers hired by Corizon be licensed by the State of Arizona.

(**Ex. 1** - pp. 30; 15, 28-29; 11; 30-34.)

For years, Corizon provided healthcare services to prisons throughout the country. (**Ex. 3** - Excerpt from March 17, 2021, Offer to Missouri.) Between 2016 and 2021, however, business began to dwindle, and by 2022, Corizon lost statewide contracts in Michigan, Kansas, Missouri, Tennessee, and Idaho. E (Id. at p. 2; **Ex. 4** - YesCare May 16, 2022, press release.) Consequently, Corizon served only fifty-two prisons by May 2022 - a sharp decline from the 149 prisons it served in 2019. (Id. at p. 3.)

Despite this plunge in revenue, Corizon continued to accrue considerable liabilities. Indeed, Corizon remained potentially liable for numerous prisoner tort actions, including actions that originated in prisons where Corizon no longer had active contracts. (**Ex. 5** - Corizon pending active federal cases Arizona; **Ex. 6** - AZDOC press release awarding healthcare contract to competitor; **Ex. 7** - Corizon Litigation History Disclosure from 11-30-2020.) By the end of 2021, Corizon became "insolvent" and "was headed towards bankruptcy" largely because of numerous prisoner tort actions. (**Ex. 8** – YesCare/CHS TX Response in Jackson v Corizon case 2:19-cv-13382.)

Instead of using its assets to compensate creditors for damages it caused, Corizon attempted to avoid liability by a separation of assets and liabilities into shell companies via Texas "divisional merger." *See In re LTL Mgmt. LLC*, 2021 Bankr. LEXIS 3155 at *26-*27 (Bankr. W.D.N.C. Nov. 16, 2021) (chronicling recent history of Texas divisional mergers). These shell companies often declare bankruptcy, but not without first agreeing to "indemnify" their solvent corporate counterpart, so that the related company can also benefit from the automatic bankruptcy stay. *See In re Aldrich Pump LLC*, No. 20-30608 (JCW), 2021 WL 3729335, at *33 (Bankr. W.D.N.C. Aug. 23, 2021). This maneuver, which has

come to be known as the "Texas Two-Step,"[1] is being vigorously litigated in several forums, and was employed by Corizon as outlined below.[2]

While a merger in most states refers to a combination of two or more business organizations, Texas defines mergers to include statutory divisions of a single corporation. Tex. Bus. Orgs. Code § 1.002(55)(A) (2015); *see also In re Aldrich Pump LLC,* No. 20-30608, 2021 WL 3729335, at *27 & n.215 (W.D.N.C. Aug. 23, 2021). Thus, a Texas Corporation can undergo a corporate mitosis where it splits into multiple successor corporations. When a Texas corporation engages in this legal grafting, the corporation may apportion its assets and liabilities as it so chooses. Tex. Bus. Orgs. Code §§10.001(a) and §§10.003. Under Texas law, creditors once assigned, can generally only recover from the entity it was assigned to by its debtor, or in this case, tortfeasor. Tex. Bus. Orgs. Code §§10.008(a)(3)-(4).[3] *See Plastronics Socket Partners, Ltd. v. Hwang*, No. 2020-1739, 2022 WL 108948 (Fed. Cir. Jan. 12, 2022).

***Texas Two Step - Step 1: Divisional Merger***

Corizon took the first step towards its divisional merger in April 2022 when it converted to a Texas Corporation. (**Ex. 11** - Certificate of Conversion.) Days later, three of its sister companies merged into Corizon, with Corizon remaining as the surviving corporation. (**Ex. 12** - Plan of Combination Merger.) Corizon then underwent a divisional merger which it survived while creating a new corporation, CHS TX, Inc., to which virtually

---

[1] Andrew V. Alfano, PILLSBURY, WINTHROP, SHAW, PITTMAN LLP, *Plastronics, LTL and the "Texas Two Step,"* (2022), (**Ex. 9** - Plastronics LTL and the Texas Two Step.)

[2] Nicole Einbinder & Dakin Campbell, BUSINESS INSIDER, *Hidden Investors Took Over Corizon Health, a leading Prison Healthcare Company. Then They Deployed the Texas Two-Step* (2023), (**Ex. 10** - Hidden Investors Article.)

[3] Compare this to Arizona, which also allows divisive mergers, but allows for the creditors to recover from the assets of both resulting companies. A.R.S. 20-2601 et seq and 20-2607(A). This is necessary under Arizona law to prevent fraudulent transfers. A.R.S. 44-1001 et. Seq.

all of its valuable assets and ongoing contracts were transferred. (**Ex. 13** - Plan of Divisional Merger.)

Corizon's full restructuring transaction proceeded as follows:

a. On January 31, 2022, YesCare Corp. was incorporated in Texas. Corizon's CEO, Sara Tirschwell was its registered agent and sole Director at the time of formation. (**Ex. 14** - YesCare Corp Certificate of Formation; **Ex. 15** - Sara Tirschwell Op-Ed 4-26-22; **Ex. 16** - Corizon's Florida Annual Report Naming Directors and Officers 4-19-2022.)

b. On April 19, 2022, Corizon, through its CFO filed an annual report which in part detailed its corporate structure. (Id.) Corizon maintained its principal place of business in Tennessee. (Id.) At that time, Corizon's corporate officers were Sara Tirschwell as CEO, Scott King as SEC, Ayodeji ("Greggory") Ladele, M.D. as CMO and Jeffrey Sholey as CFO. (Id.)

c. On April 28, 2022, Corizon and its parent company, Valitas Health Services, Inc., were converted from Delaware corporations to Texas corporations. (**Ex.17** - Corizon Health, Inc. conversion from Delaware Corp to Texas Corp 4-28-2022; **Ex. 18** - Valitas Health Services Inc. conversion from Delaware Corp to Texas Corp 4-28-2022.)

d. At the time of the conversions, Corizon had no significant operations in Texas. (**Ex. 13.**)

e. Corizon's corporate headquarters remained in Brentwood, Tennessee, and it maintained a second major corporate office in St. Louis, Missouri. (**Ex. 13.**)

f. On May 3, 2022, Valitas Health Services, Inc., Corizon, and the two Corizon subsidiaries that were incorporated in states other than Delaware, Corizon, LLC (a Missouri entity) and Corizon Health of New Jersey, LLC, (a New Jersey entity), completed a four-way merger under the Texas Business Organizations Code. The four entities merged into one surviving Texas corporation: Corizon Health, Inc. ("Corizon"). (**Ex. 19** - Four Way Certificate of Merger.)

g. Also on May 3, 2022, immediately following the four-way merger, the combined entity, "Corizon," underwent a Texas divisional merger, keeping Corizon and creating a new entity: CHS TX, Inc. (**Ex. 13**; **Ex. 20** - Certificate of Divisional Merger.)

h. At the time, CHS TX's Board of Directors consisted of Sara Tirschwell as Chair, Scott King, Jeff Sholey and Gregory Ladele. The officers of CHS TX were Sara Tirschwell as CEO, Scott King as Chief Legal Officer, Jeffery Sholey as CFO and Gregory Ladele as CMO. (Bylaws of CHS TX). (**Ex. 13**; **Ex. 20**.) All CHS TX directors and officers were Corizon's former Directors and officers. (**Ex. 16**.)

i. On May 5, 2022, CHS TX, YesCare and Corizon Health of New Mexico LLC entered into numerous agreements with Geneva Consulting LLC, a Delaware LLC, with each agreement requiring any subsidiary or affiliates of YesCare to sign a Joinder to all the agreements. These agreements included a Stock Restriction Agreement, a Stock Transfer Agreement and a Management Services Agreement ("MSA"). (**Ex. 21** - 5-5-2022 Stock Restriction Agreement; **Ex. 22** - 5-5-2022 Stock Transfer Agreement; **Ex. 23** - 5-5-2022 Management Services Agreement; **Ex. 41** - Geneva Consulting LLC Certificate of Formation.)

j. The MSA, which initial term is for 30 years with 5-year automatic renewals, contained numerous other agreements attached as exhibits, including a Power of Attorney and Employee Leasing Agreement. Sara Tirschwell signed all of these agreements on behalf of CHS TX, YesCare and Corizon Health of New Mexico LLC. (Id.)

k. The MSA gives Geneva, as Manager, **complete control** over CHX TX, YesCare and all YesCare subsidiaries and affiliates (Collectively "YesCare Entities"). (Id.) Under the MSA, Geneva runs all aspects of the YesCare Entities businesses, including signing contracts on their behalf, receives all of their revenues, pays all of their expenses including the Management Fee to Geneva which Geneva can unilaterally increase at will without any of the YesCare Entities' consent. In fact, pursuant to the MSA, the YesCare Entities cannot do **anything** without Geneva's consent. (Id.)

l. Also, on May 5, 2022, Valitas Intermediate Holdings Inc. sold CHS TX to YesCare Corp for **$100.00.** (**Ex. 24** - 5-5-2022 Equity Purchase Agreement of CHS TX - Valitas to YesCare for $100.)

m. On Friday, May 13, 2022, Corizon informed its clients that on the following Monday, May 16, 2022, it would publicly announce that "Corizon Health is now YesCare." (**Ex. 25** - 5-13-2022 email from Corizon VP - Corizon Health

is now YesCare; **Ex. 26** - 5-13-2022 email from Corizon VP with CEO Ltr attached - Corizon is now YesCare.)

n. On May 16, 2022, YesCare issued a press release entitled, "Leading Healthcare Group Forms YesCare, Debuting New Vision and Leadership," and introducing YesCare's top management. All eleven executives listed in the press release previously held management positions in old Corizon. The press release went on to say that "the dedicated employees of Corizon Health are now YesCare." (**Ex. 4**.)

o. On June 1, 2022, post-divisional-merger Corizon Health, Inc. changed its name to "Tehum Care Services, Inc." ("Tehum") (**Ex. 27** - Corizon to Tehum Certificate of Amendment.)

p. On June 2, 2022, YesCare, Senior Vice President, Karen Davies sent an email to one of Corizon's current customers stating that "YesCare acquired all the active business of Corizon" and is "now vested with CHS TX … a wholly owned subsidiary of YesCare." The email further stated that "[a]ny future contract amendments we will want to reflect that CHS is the successor contracting entity." (**Ex. 28** - 6-2-2022 email from VP to Corizon Customer.)

Corizon's divisional merger allocated essentially all of Corizon's assets to CHS TX. Specifically, CHS TX inherited all of Corizon's employees, all of Corizon's active contracts, and nearly all of Corizon's cash, equipment, real estate, and other assets. (**Ex. 13**, pp. 1-2; 10-21.) Both pre-division Corizon and CHS TX were owned by the same, sole-shareholder, and CHS TX also inherited Corizon's CEO and Chair, Sara Tirschwell along with numerous other of Corizon's Directors and Officers. (Compare Id. at p. 3 with **Ex. 12**, p. 2 and **Ex.11**, p.8-9.) While CHS TX purported to also assume secured liabilities from Corizon, those liabilities were later determined to be inflated and illusory. (**Ex. 33** - Corizon/Tehum BK Disclosure Statement Joint Ch 11 Plan, p. 19.)

Corizon retained all of its expired contracts and their corresponding liabilities. Corizon also held onto one million dollars in cash, the right to collect on certain of its

insurance policies,[4] and the right to collect up to four million dollars under a "funding agreement" with an affiliate of Corizon, provided that Corizon met "certain conditions." (**Ex. 13**, pp. 22-23.) Corizon was also saddled with more than 460 professional liability claims and lawsuits, including cases from Alabama, Arizona, Colorado, Florida, Georgia, Idaho, Indiana, Kansas, Kentucky, Maryland, Michigan, Missouri, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Tennessee, and Virginia, involving incidents from 2010-2021 including mental health, medication, excessive force, sexual assault, wrongful death and others.[5] ( Id. at pp. 131-145.) All other assets and liabilities passed to CHS TX. (Id. at pp. 10-11.)

Two days after the divisional merger and on the same day as the Geneva MSA was signed, YesCare, a corporation owned by CHS TX's CEO, acquired CHS TX for $100.00, and CHS TX began doing business under its parent company's name. (**Ex. 8**, p. 17; **Ex. 14**; **Ex. 23**; **Ex. 24** and **Ex. 28**; *see, e.g.,* **Ex. 30** - 6-1-2022 email with attached memorandum edited by YesCare (and formerly Corizon) General Counsel Jennifer Finger; **Ex. 31** - redlined memorandum of understanding between YesCare and Brevard County Sherrif's Office (explaining that CHS TX does business under the name "YesCare".))

***Texas Two-Step - Step 2: File Bankruptcy***

The second step of the Texas Two-Step is for the intentionally liability strapped company to file bankruptcy. The newly named Tehum Care Services, Inc. or "Corizon/Tehum" filed for bankruptcy protection on February 13, 2023.[6] The merger left

---

[4] Pursuant to the divisional merger CHS TX was named as an insured under most of Corizon's existing lines of insurance. (**Ex. 13**.)

[5] Michael Fenne, PRIVATE EQUITY STAKEHOLDER PROJECT, *YesCare Dodges Liability for Prison Conditions: Merger, Division, and Bankruptcy* (2023), (**Ex. 29** - YesCare Dodges Liability.)

[6] After Corizon/Tehum filed for Bankruptcy, CHS TX was awarded a contract worth an estimated one billion dollars with the State of Alabama. (**Ex.32** - Alabama Daily News - New ADOC inmate health contract $1B, 4.5 years.)

Corizon/Tehum to report on their schedules of assets and liabilities in Bankruptcy Court to hold $0 in assets and $82,208,546.72 in liabilities.[7] (**Ex. 34** - Corizon/Tehum's Schedules of Assets and Liabilities, p. 14.) While the bankruptcy was pending, the United States Supreme Court ruled that using a divisional merger to effectuate the release of third parties through the bankruptcy process without the consent of the individual claimants was unconstitutional. *Harrington v. Purdue Pharma L. P.,* 603 U.S. 204, 233 (2024).

As such, a strategic plan was formulated in Corizon/Tehum's bankruptcy case to create an "opt out" to allow claimants to forego recovery from the Bankruptcy Estate if they instead chose to preserve their causes of action for fraudulent transfer, successor liability, alter ego, and veil piercing. (**Ex. 35** - Corizon/Tehum BK Plan, p. 29.) Through the bankruptcy process, Corizon/Tehum also proposed a settlement that was negotiated between Corizon and other stakeholders to form a plan for winding down. Plaintiff Windhurst voted to approve the plan seeking to expedite rights related to her decision to "opt out" of the proposed third-party releases. (**Ex. 36** - Corizon/Tehum Tabulation of Votes on Plan and opt out, pp. 25; 33.) By doing so, Plaintiff Windhurst kept alive her claims to legally pursue CHS TX, YesCare and Geneva for their liability under theories of fraudulent transfer, successor liability, alter ego, and veil piercing. (**Ex. 35**, p. 29.)

## III. <u>STANDARD OF REVIEW</u>

Rule 25(c), *Ariz.R.Civ.P.,* governs motions for substitution where a party has transferred its interest in an ongoing action. When a party's interest in an ongoing lawsuit has been transferred to another individual or organization, courts may either substitute the transferee for the original party or join the transferee to the action alongside the original party. *Id.* The moving party carries the burden of proof on a Rule 25 motion. *Id.,*

---

[7] Tehum has transferred tens of millions of dollars to entities some of its investors' control, according to a financial statement the company filed in the bankruptcy case. (**Ex. 33**, pp. 25-26.)

*Kowalski v. Integral Seafood LLC,* Nos. 05-00679, 06-00182, 2007 WL 1376378, at *5 (D. Haw. May 4, 2007).

In this case there are no material facts in dispute. It is indisputable that Corizon transferred its "interest" (all of its valuable assets) in this matter to CHS TX. However, before reaching the ultimate issue of whether CHS TX and YesCare are successor entities to Corizon or whether YesCare and/or Geneva are the alter egos of CHS TX, the Court must first address a threshold, choice-of-law question to determine whether Arizona or Texas law governs. Based on the undisputed facts of this case, Arizona law governs.

## IV. ARGUMENT

### A. CHOICE OF LAW

Arizona courts follow the Restatement (Second) of Conflict of Laws ("Restatement of Conflicts") in determining choice of law issues. *Bates v. Superior Court (Nationwide Ins. Co.),* 156 Ariz. 46, 48, 749 P.2d 1367, 1369 (1988); *Burr v. Renewal Guaranty Corp.*, 105 Ariz. 549, 550, 468 P.2d 576, 577 (1970). When analyzing corporate law issues, Arizona courts distinguish between matters of "internal affairs," which are governed by the law of the state of incorporation, and matters involving liability to third parties, where broader choice-of-law principles apply. *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983); *Winsor v. Glasswerks PHX, L.L.C.*, 204 Ariz. 303, 306–07 (Ct. App. 2003), *Norton v. Phonejockey LLC*, No. 1 CA-CV 15-0186, 2016 WL 5939723, at *4 (Ariz. Ct. App. Oct. 13, 2016), *as amended* (Nov. 17, 2016).

Successor liability, alter ego, and veil-piercing theories concern liability to third parties—here, Windhurst—not to shareholders or internal stakeholders. Thus, the internal affairs doctrine does not apply. See *Piercing the Corporate Law Veil*, 95 Harv. L. Rev. 853, 862–63 (1982); *Macaluso v. Jenkins*, 95 Ill. App. 3d 461, 465 (1981).

Instead, in liability to third parties cases, Courts employ more flexible, interest-balancing tests to determine which state's law should apply. *Id.; see also Chrysler Corp. v.*

*Ford Motor Co.*, 972 F. Supp. 1097, 1102 (E.D. Mich. 1997); *Kaiser-Francis Oil Co. v. Deutsche Oel & Gas, S.A.*, No. S-18546, 2025 WL 941611 (Alaska Mar. 28, 2025). According to the Restatement of Conflicts, the applicable choice of law rules depend on whether the act at issue is one that can be performed by both corporations and individuals. §§ 301–02 (Am. Law Inst. 1971). If both corporations and individuals can perform the act, then the issue is analyzed under either tort or contract choice of law rules. *Id.* § 301. Successor liability, alter ego and veil-piercing fall into this category because they involve equitable remedies related to tort and contract conduct. *Id.* The relevant "act" is not the underlying claim, but the "transaction giving rise to potential successor liability ...." *Lopez,* 2017 WL 3142028, at *33 (quoting *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1174 (C.D. Cal. 2011)); *see also Maine State Retirement Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302, 2011 WL 1765509, at *3–4 (C.D. Cal. Apr. 20, 2011).

So, the relevant question as to Plaintiff Windhurst and the successorship, alter ego and corporate veil theories concern conduct that can be performed by both private individuals and corporations—not whether the medical malpractice and adult protective services wrongful death claims concern conduct that can be performed by both private individuals and corporations. *See Lopez,* 2017 WL 3142028, at *33; *see also* Restatement (Second) of Conflict of Laws § 302 cmt. G, illus. 1–2.

Sections 301 and 302 of the Restatement provide as follows:

> § 301: The rights and liabilities of a corporation with respect to a third person that arise from a corporate act of a sort that can likewise be done by an individual are determined by the same choice-of-law principles as are applicable to non-corporate parties.
>
> § 302:(1) Issues involving the rights and liabilities of a corporation, other than those dealt with in § 301, are determined by the local law of the state which, with respect to the particular issue, has the most

> significant relationship to the occurrence and the parties under the principles stated in § 6.(2) The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws §§ 301, 302 (1971). In instances where "a corporation does an act that can be committed by a non-corporate entity, § 301 applies standard choice of law rules according to the particular liability involved (e.g., contract or tort law)." *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1102 (E.D. Mich. 1997). If instead "the act is one peculiar to corporations," section 302 provides that "the law of the state of incorporation will normally be applied, unless another state has a 'more significant relationship' to the lawsuit." *Id.*

In *Chrysler*, the court faced a choice-of-law question in a case with factual similarities to the present one. At issue was whether a purchaser of a corporate subsidiary was a successor-in-interest to the subsidiary's former parent corporation's alleged liabilities incurred in Michigan under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *Id.* at 1099-1100. The defendants argued that the laws of the state of the subsidiary's incorporation, Pennsylvania, should apply "since the purported successor liabilities of [the subsidiary] are at issue." *Id.* at 1101. The purchaser, in contrast, argued that Michigan law should apply because Michigan had the greatest interest in, and connection to, the events giving rise to the parent corporation's CERCLA liabilities. *Id.*

The *Chrysler* court recognized that sections 301 and 302 of the Restatement governed the choice-of-law analysis. *Id.* at 1102. In deciding which section to apply, the court reasoned:

> A non-corporate entity may accrue CERCLA liability, and on that basis § 301 would appear to apply here, leading to the application of normal contract or tort choice of law rules. However, it could

> also be argued that successor liability or piercing of the corporate veil are theories of liability peculiar to corporations, in which case § 302 applies. Even if that is so, the terms of § 302 do not mandate the law of the state of incorporation in this case, where the matter is not one of internal corporate governance but rather external liability, and where Michigan has a far more significant relationship to the events in question than does the state of incorporation.

*Id.* at 1102. The court also emphasized that in cases where external liabilities are involved, the interests "go far beyond corporate governance, as the acts of predecessor and successor corporation affect a wide range of interests outside the corporation." *Id.* at 1103. The state where the acts giving rise to the alleged external liability occurred has an "interest in applying its law to citizens injured by foreign corporations," which "outweighs the interest of the incorporating state." *Id.* Furthermore, the court noted that "[t]he alleged successor (or alter-ego) and those who seek to recover from it did not organize their relationship under the umbrella of the incorporating state's law, as would be the case in an internal dispute within a corporation or between a corporation and its shareholders." *Id.* Therefore, the court concluded that section 302 did not require the application of Pennsylvania's successor liability laws. The court instead applied section 301 and found that Michigan's successor liability laws applied.

*Chrysler* and the present case bear substantial similarities. Just as CERCLA liability is not purely a matter of internal corporate governance, neither is liability for medical malpractice and adult protective services wrongful death claims. Furthermore, similar to *Chrysler*, Corizon's divisional merger implicates a wide range of interests with respect to Plaintiff's medical malpractice and adult protective services wrongful death claims against Corizon. Plaintiff has an interest in Arizona's successor liability laws applying here because David Windhurst formed his relationship with Corizon in Arizona. The State of Arizona also has an interest in having its successor liability laws govern cases where its citizens are injured by foreign corporations. Unlike *Chrysler*, the State of Arizona's interest here is

even greater because the underlying liability which runs to the State is due to their delegation of a non-delegable duty. As recognized in *Chrysler*, interests of this nature outweigh any interest the company's state of incorporation might have in having its successor liability laws apply. This is especially true here in light of the fact that Corizon undertook its divisional merger and incorporated in Texas **after** Plaintiff's alleged injury occurred and **after** Plaintiff initiated the present lawsuit. As such, in accordance with *Chrysler*, section 302 of the Restatement does not require the Court to apply Texas's successor liability laws here.

In this case, the injury and death occurred in Arizona. The conduct causing the injury, which resulted in Mr. Windhurst's death, occurred in Arizona. Corizon's liability is from its contract that was entered in the State of Arizona, with the State of Arizona and is governed by Arizona Law. CHS TX , YesCare and Geneva have virtually no connection to Texas other than CHS TX's and YesCare's incorporation. (**Ex. 8**, p.21.) Indeed, Corizon, Tehum, YesCare and CHS TX all hold their principal place of business in Tennessee. (Id.; **Ex. 20.**) Corizon did not conduct any business in Texas when it began the merger, and following the merger, neither Tehum, CHS TX, nor YesCare conduct any business in Texas. (**Ex. 13**, pp. 10-15; 22-23.)

In terms of public policy, the purpose of these doctrines—disregarding the corporate form to provide relief to outside parties—is also why the Court cannot disregard Arizona's interests in this matter. While these equitable doctrines are unquestionably rooted in corporate law, their purpose is to permit injured tort and contract plaintiffs to circumvent the corporate from when that form has been abused or used to perpetrate a fraud. For that reason, "a state's interest in applying its law to citizens injured by foreign corporations [often] outweighs the interest of the incorporating state." *Chrysler,* 972 F. Supp. at 1104; *see also Korzetz v. Amsted Indus., Inc.,* 472 F. Supp. 136, 142 (E.D. Mich. 1979); *Lopata v. Bemis Co.,* 406 F. Supp. 521, 524 (E.D. Pa. 1975).

Indeed, "a state in which a parent and its subsidiary do business must be able to regulate the extent to which one is liable for the wrongs of the other, particularly when those wrongs are committed within the state." *Chrysler.* That is particularly true where, as here, the corporation commits a tort against a third-party plaintiff. *See Allstate,* F. Supp. 3d at 1174 n.11. Indeed, "when the plaintiff is a third party who had no business relationship with the defendant" the plaintiff's state "has a stronger interest in applying its law to disregard the corporate form." *Id.*

Thus, Arizona has a heightened interest in applying its own laws to determine whether it should disregard the corporate form. Arizona, as Plaintiff's and David Windhurst's home state, has a strong interest in applying its own law to determine whether the Court should disregard the corporate form. Texas has a weak interest in enforcing its successorship liability and alter ego doctrines under these circumstances. Accordingly, the Court must look to Arizona law to determine whether Corizon transferred its interest to CHS TX and YesCare making CHS TX and YesCare successors to Corizon. Likewise, Arizona law must be used to determine if YesCare and Geneva are mere alter egos of CHS TX.

## B. TRANSFER OF INTEREST

### 1. CHS TX and YesCare are successors to Corizon

Arizona's general rule for successor liability when a corporation sells or transfers its principal asset(s) to a successor corporation is that the corporation is not deemed liable for the former's debts and liabilities. *A.R. Teeters & Associates, Inc. v. Eastman Kodak Co.*, 172 Ariz. 324, 329 (Ariz. App. 1992). It is only when "'[a] corporation goes through a mere change in form without a significant change in substance [that] it should not be allowed to escape liability." *Warne Investments, Ltd. v. Higgins et al.*, 219 Ariz. 186, 195 P. 3d 645, 650-51 (App. 2008), *citing Gladstone v. Stuart Cinemas, Inc.*, 878 A.2d 214, ¶ 19, 178 Vt. 104 (Vt. 2005).

Arizona recognizes four circumstances in which successor liability can attach to a corporation:

> (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, **(3) <u>the purchasing corporation is a mere continuation [or reincarnation] of the seller</u>, or (4) <u>the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts</u>.**

*A.R. Teeters*, 172 Ariz. at 329, *citing Maloney v. American Pharm. Co.*, 207 Cal.App.3d. 282, 287, 255 Cal.Rptr. 1 (1989) (*quoting Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 578, 560 P.2d 3, 7 (1977)) (Emphasis added.); *Acheson v. Falstaff Brewing Corp.,* 523 F.2d 1327, 1329–1330 (9th Cir. 1975).

Here, a Texas Two-Step divisional merger does not fall squarely under the category of a "merger" or an "asset purchase." There was no "purchase" of one existing corporation by another, nor was there a "merger" where two or more business organizations combined into one. This was a "mere continuation" via transfer of assets of an ongoing operation. *In re Bullseye Holdings, LLC*, No. 4:13-BK-21374-BMW, 2018 WL 4998089, at *6 (Bankr. D. Ariz. Oct. 15, 2018) *citing Stramaglia v. United States*, No. 06-13764, 2008 WL 11412164, at *4 (E.D. Mich. Mar. 18, 2008), *aff'd,* 377 F. App'x 472 (6th Cir. 2010). Based on this, circumstances (3) and (4) apply, and as discussed below establishes that CHS TX and YesCare are mere continuations of Corizon and the transfer of Corizon's assets was done for a fraudulent purpose.

In considering the third circumstance, the mere continuation exception "reinforces the policy of protecting rights of a creditor by allowing a creditor to recover from the successor corporation whenever the successor is substantially the same as the predecessor." *Idearc Media, LLC v. Palmisano & Associates, PC* 929 F. Supp. 2d 939 (D. Ariz. 2013), *citing Warne Investments, Ltd. v. Higgins et al.*, 219 Ariz. 186, 195 P. 3d 645,

650-51 (Ariz. App. 2008). "A crucial factor in determining if a successor corporation is a mere continuation or reincarnation of a predecessor corporation is whether there is a substantial similarity in ownership and control of the two corporations." *A.R. Teeters*, 172 Ariz. at 329-330.

Things to consider in analyzing similarity of ownership and control are common identity of the officers, directors and stockholders in the two companies; is the successor corporation conducting the same or similar business in the same location as its predecessor; and is there "insufficient consideration running from the new company to the old" for the assets passing to the new company. *Id.* at 330. *See also Stoumbos v. Kilimnik*, 988 F. 2d 949, 961 (9th Cir. 1993). Courts will engage in a multi-factor analysis while considering the totality of the circumstances on whether there is a continuation of the old corporation to the new. *Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1090 (9th Cir. 2015).

Considering the totality of the circumstances, it is clear that CHS TX and YesCare are mere continuations of pre-division Corizon. YesCare, a company created by the CEO and Chair of the Board of Directors of both Corizon and CHS TX, Sara Tirschwell, paid $100 to acquire CHS TX, a company with millions of dollars of assets, at the very moment CHS TX was created. (**Ex. 13**; **Ex. 20**; **Ex. 24**.) This was clearly a sham transaction and should be treated as such. At the time of the sale, both CHS TX and Corizon had the same sole shareholder: Valitas Intermediate Holdings Inc. (**Ex. 13**, pp. 1-3.) Moreover, each company had the same CEO and Chair of their Board of directors, and virtually all the same corporate offices and Boad members. (**Ex. 11**; **Ex. 12**; **Ex. 13**.) So if CHS TX is a successor to Corizon, YesCare is as well.

While CHS TX (and YesCare through its sham purchase of CHS TX) did not acquire all of Corizon's assets, it did acquire substantially all of Corizon's assets, including Corizon's active contracts, all of their equipment, and all of their employees. (**Ex. 11**; **Ex.**

**12; Ex. 13.**) CHS TX acquired all these assets for no consideration, let alone insufficient consideration. In fact, only a limited amount of cash, a funding agreement, access to certain insurance policies, responsibility for expired contracts, and millions of dollars in liabilities for pending negligence claims remained with Corizon following the divisional merger. (Id. at pp. 22-23.) This is an archetypal fraudulent transfer under Arizona law. *See A.R.S. § 44-1004 (A).*

Additionally, CHS TX and YesCare picked up right where Corizon left off. Indeed, CHS TX and YesCare hold themselves out to clients as Corizon's successor. Doing business as YesCare, CHS TX informed its clients that it had acquired "all the active business of Corizon." (**Ex. 4**; **Ex. 25**; **Ex. 26**; **Ex. 28**.) Moreover, Corizon, CHS TX and YesCare all have their principal place of business in Tennessee, all at the same address. And most importantly, CHS TX and YesCare are conducting the exact same business as Corizon was doing Pre-Texas Two-Step, with the same employees and corporate officers. So much so that YesCare, a company formed in 2022, holds itself out as having "more than 40 years of experience" "provid[ing] expert medical, dental and behavioral health services to more than 1,000,000 patients at 475 correctional facilities across the country." (**Ex. 14**; **Ex. 37** - YesCare Website - yescarecorp.com/about.) Thus, CHS TX and YesCare are nothing but a "reincarnation" of Corizon and should be treated as such.

In considering the fourth circumstance in which successor liability will attach, it is plainly apparent that Corizon execution of the Texas Two-Step was done for the sole purpose of fraudulently attempting to escape liability for the damage caused by its negligent conduct. A former Corizon/Valitas executive called it "an old-fashioned bankruptcy fraud scheme -- taking assets and avoiding liabilities, while draining coffers into their own pockets." (**Ex. 38** - 12-30-2022 - Hyman v YesCare - Complaint MD Tenn., p. 3.) YesCare denies claims of fraud, but its actions say otherwise. (**Ex. 39** - 3-24-2023 - Hyman v YesCare - Answer CHS TX and YesCare.)

The divisional merger allowed CHS TX and YesCare to operate outside of bankruptcy, while simultaneously taking advantage of the bankruptcy process under Corizon/Tehum. This is self-dealing and an attempt to put Corizon's assets outside the reach of creditors like the Plaintiff here. It is indisputable that as part of a pre-bankruptcy strategy, Corizon engaged in a series of fraudulent transfers in order to shed their books of liabilities by reincarnating into CHS TX and YesCare and transferring their valuable assets to CHS TX and YesCare and leaving all their liabilities in Corizon/Tehum. (**Ex. 10**; **Ex. 11**; **Ex. 12**; **Ex. 13**; **Ex. 33**; **Ex. 35**.) This was done to defraud Plaintiff and others Corizon had injured through the years, by then attempting to bankrupt these liabilities away in the Corizon/Tehum bankruptcy. (Id.) And they may have gotten away with, but for the *Harrington* decision issued by the United States Supreme Court.

Considering the totality of the circumstances, it is clear CHS TX and YesCare are mere continuations of Corizon and that the Texas Two-Step was done for the fraudulent purpose of trying to escape liability for the hundreds of victims Corizon injured or killed. As such, CHS TX and YesCare are successor-in-interest to Corizon and pursuant to rule 25(c), should be substituted in this case for Corizon or joined to the case.

**2. <u>YesCare and Geneva are the alter egos of CHS TX</u>**

Based on the undisputed facts, it is clear that YesCare, in addition to being a successor-in-interest to Corizon, is at a minimum also the alter ego of CHS TX. Moreover, given Geneva's complete control over CHS TX and YesCare, also makes it the alter ego of CHS TX.

Alter ego liability is an equitable remedy that holds shareholders (both individuals and organizations) personally liable for acts of corporation. Arizona recognizes that there are circumstances in which the corporate form can be disregarded, and shareholders and individual officers can be held personally liable for their conduct. *See Dietel v. Day*, 16

Ariz.App. 206, 208 (1972). This is largely because the purpose of a corporation is to avoid personal liability, however, it cannot be used as a mere shield to escape personal liability. *Id.*

To establish an alter ego theory of liability and be able to pierce the corporate veil, a plaintiff "must establish (1) unity of control and (2) that observance of corporate form would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37 (1991); *Dietel v. Day*, 16 Ariz. App. 206, 208 (Ariz. App. 1972). These determinations are highly fact-based and require one to consider them under the totality of the circumstances in which the instrumentality functions. *Pimal Property, Inc. v. Capital Ins. Group, Inc.*, 2012 U.S. Dist. LEXIS 24172, at *5 (D. Ariz. February 27, 2012). Specifically, courts ask whether a shareholder used the corporation as a "mere instrumentality" to evade liability for some "fraud or wrong" against the plaintiff. *Id.* at 454.

When a person or entity dominates the other to make the other a mere instrumentality, the court must look beyond the legal fiction of the corporate existence, as the interest of justice so requires. *Gatecliff*, 170 Ariz. at 37. Unity of control will exist when it is determined that a parent corporation or individual has substantial control over management and activities of the entity. *Id.* Substantial control can be proven by showing "stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence." *Id.* at 37.

In this case, one only need to look at the Mangement Services Agreement entered into between CHS TX, YesCare and Geneva to see how CHX TX is a "mere instrumentality" of YesCare and Geneva. (**Ex. 23.**) This MSA was done at the exact same time as Corizon's divisional merger. The MSA gives Geneva, as Manager, **complete control** over CHX TX, YesCare and all of YesCare subsidiaries and affiliates into the

future. (Collectively "YesCare Entities."). (Id.) Under the MSA, Geneva runs all aspects of the YesCare Entities' businesses, including signing contracts on their behalf, receiving all their revenues, paying all of their expenses including paying themselves a Management Fee that they can change at-will without any of the YesCare Entities consent. (Id.) In fact, pursuant to the MSA, the YesCare Entities cannot do **anything** without Geneva's consent. (Id.)

So, the MSA, coupled with the Stock Restriction Agreement and Stock Transfer Agreement entered into between CHS TX, YesCare and Geneva, gives Geneva **complete irrevocable "unity of control"** over all aspects of CHS TX's and YesCare's operation.[8] (Id.) Based on the MSA, YesCare is nothing more than a shell company whose name is used by Geneva and CHS TX for marketing. The MSA allows Geneva to sign contracts for CHS TX in CHS TX name or in the name of YesCare, all while keeping all the revenue generated for itself. Geneva keeps all YesCare and CHS TX revenues, while hiding behind its corporate form to protect it from the inevitable liabilities that will surely come via CHS TX medical negligence claims.

Finally, Geneva was created by David Gefner, an insider who has been a Tehum Director, YesCare President and Geneva's CEO. (**Ex. 40**; **Ex. 41**.) Geneva also uses YesCare and CHS TX as alternative names in the different states in which they conduct business. (**Ex. 41** - Geneva Consulting LLC New Jersey Corp. Filings.) There are also numerous other insiders, officers and directors shared by all these entities. (**Ex. 11; Ex. 13**; **Ex. 21**; **Ex. 22**; **Ex. 23**; **Ex. 24**; **Ex. 33**; **Ex. 35**.) This coupled with the above, establishes unity of control and makes YesCare and Geneva alter egos of CHS TX.

---

[8] For a more thorough explanation of Corizon's and Geneva's shell game, see "Inside a prison healthcare company's ownership shell game", by Dakin Campbell and Nicole Einbinder, 3-5-2024, Business Insider. (**Ex. 40** - Inside a prison healthcare company's ownership shell game.)

Not piercing the corporate veil in this case would "sanction a fraud [and] promote injustice." *Gatecliff,* 170 Ariz. at 37. It is apparent to all that this entire Texas Two-Step scheme concocted by Corizon, CHX TX, YesCare and their numerous insiders is nothing more than an attempt to defraud hundreds of injured plaintiffs throughout the country. If Geneva is not added to this case and Plaintiff obtains a Judgment against CHS TX and YesCare, it will be unable to collect, because Geneva has all CHS TX and YesCare's money and controls all their assets. This would be an injustice.

## V. <u>CONCLUSION</u>

Under Arizona law, CHS TX and YesCare are successors-in-interest to Corizon's interest in this case, because they are a "mere continuation" of Corizon. As such, this Court must substitute CHS TX and YesCare in this case for Corizon, or order CHS TX and YesCare joined to this case as defendants.

Additionally, because YesCare is merely the alter ego of CHS TX, it should also be substituted for Corizon or added as a party to this case.

Finally, because Geneva is using YesCare and CHS TX as a mere instrumentality to evade liability, it is nothing more than the alter ego of YesCare and CHS TX. Based on this, Geneva should also be substituted for Corizon or added as a party to this case.

Dated May 16, 2025.

MESCH CLARK ROTHSCHILD

By: *s/Nathan S. Rothschild*
Nathan S. Rothschild
Katie Filous Malka
Attorneys for Plaintiff

CRAWFORD LAW, PLLC

By: *s/Michael J. Crawford*
Michael J. Crawford
Attorneys for Plaintiff

Copy emailed May 16, 2025, to:

Anthony J. Fernandez
Alyssa R. Illsley
Dustin A. Christner
Quintairos, Prieto, Wood & Boyer, P.A.
8800 E. Raintree Drive, Ste. 100
Scottsdale, AZ 85260
Attorneys for Defendants